**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CLEVELAND MYERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 12 C 1866** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **JOLIET TOWNSHIP HIGH SCHOOL** | ) | |
| **DISTRICT NO. 204 and** | ) | |
| **RICHARD S. PAGLIARO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Cleveland Myers filed a five-count second amended complaint against his former employer, Joliet Township High School District #204 ("the Board"), and his former supervisor, Richard S. Pagliaro (collectively "defendants").[1] Before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND[2]

Myers began working as a custodian for Joliet Township High School in September of 1985. Myers was eventually promoted to heating operator. The terms of his employment were set out in a collective bargaining agreement between the Board and Myers's union. In 2000, Myers filed a lawsuit alleging race discrimination in this court against the District and his supervisor. The lawsuit was ultimately settled. *See Meyers* v. *Bd. of Educ. of Joliet Township High Sch. Dist. No. 204*, 00 C 01336. In addition, sometime prior to 2010, Myers filed

---

[1] This court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367. Venue is appropriate under 28 U.S.C. § 1391(b).

[2] The facts from the Background section are taken from Myers's second amended complaint and exhibits attached thereto and are presumed true for purposes of resolving defendants' motion to dismiss. *See Travel All Over the World, Inc.* v. *Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996).

approximately four charges of discrimination with the United States Equal Employment Commission ("EEOC") regarding several of the Board's staff members, whom he alleged conspired to retaliate against Myers for his opposition to unlawful employment practices.

On February 2, 2009, Myers slipped on ice in the school parking lot. Myers missed an extended period of work, requiring him to use sick days, vacation days, and his FMLA (Family and Medical Leave Act) unpaid leave while awaiting and recovering from knee replacement surgery.

On January 25, 2010, Pagliaro, the Assistant Superintendent of Joliet Township High School, issued a return to work notice to Myers. The notice indicated that Myers had exhausted all of his vacation allocation, sick leave, personal leave, and FMLA leave. The notice further indicated that Myers had been released to return to work on April 2, 2009, and on April 15, 2009, Myers's personal physician released him to return to work on light duty. Myers returned to work for 23 minutes on April 15, 2009; however, he left and has not been able to work since that day.

When Myers explained that he could not return to work due to his health issues, Pagliaro on January 28, 2010 recommended Myers's termination, stating that Myers was unable to perform his job functions and had exhausted all available sick, personal, vacation and FMLA leave. When notified of the situation, Myers's union president, Timothy Healy, presented Myers with a list of seven Caucasian individuals who had previously received or were receiving workers' compensation without any disciplinary repercussions. Healy also presented the list to the Board at their meeting on February 16, 2010.

On February 18, 2010, the Board officially terminated Myers's employment. Healy resubmitted his letter to the Board contending that Myers should be treated like other members

of his union who took disability leave. Myers contends that the termination was in response to his previous grievances filed with the EEOC against the Board for violating the terms of the collective bargaining agreement and trying to remove him from his previously held position.

Myers filed a charge with the EEOC on July 7, 2010 alleging race discrimination. On November 30, 2010, Myers filed an amended charge with the EEOC alleging race discrimination and retaliation. On September 12, 2011, the EEOC sent Myers a right-to-sue letter, which UPS unsuccessfully attempted to deliver twice before returning the letter to its facility as unclaimed. Sometime thereafter, Myers contacted the EEOC and notified them that he never received his right-to-sue letter. The EEOC then sent a right-to-sue letter, which Myers received on December 15, 2011. On March 14, 2012, Myers filed a complaint against the Board and Pagliaro. Myers filed the current five-count second amended complaint on August 20, 2012.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir.2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that

count.  In addition, complaints filed by *pro se* litigants "are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers."  *McCormick* v. *Chicago*, 230 F.3d 319, 325 (7th Cir.2000); *see also Erickson* v. *Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

## ANALYSIS

### I.      The Title VII Claims

Defendants contend that Myers's claims for race discrimination (count I) and retaliation (count II) under Title VII are barred because he failed to bring suit within 90 days of receiving his right-to-sue letter.

A party seeking redress under Title VII must first exhaust administrative remedies by filing a charge of discrimination with the EEOC and file suit within 90 days of receiving a right-to-sue letter.  *See* 42 U.S.C. § 2000e-5(f)(1); *Conner* v. *Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (internal citations omitted); *see also Davis* v. *Browner*, 113 F. Supp. 2d 1223, 1226 (N.D. Ill. 2000) ("The time limit is not flexible, even for *pro se* litigants, and a one-day delay is fatal.") (internal quotation omitted).  The 90-day time limit begins to run upon the plaintiff's actual notice of the right to sue.  *See Houston* v. *Sidley & Austin*, 185 F.3d 837, 839 (7th Cir. 1999) (internal citations omitted).  While a claimant should not be penalized when they do not receive a right to sue letter through no fault of their own, *see Archie* v. *Chicago Truck Drivers Union*, 585 F.2d 210, 216 (7th Cir. 1978), a claimant must take "reasonable steps" to ensure receipt of the right-to-sue letter.  *See St. Louis* v. *Alverno Coll.*, 744 F.2d 1314, 1317 (7th Cir. 1984).  When a right-to-sue letter is sent via certified mail and the plaintiff fails to retrieve the letter before it is returned to the EEOC, the actual notice rule does not apply unless the plaintiff delineates a reason explaining why he did not timely retrieve the letter.  *See Houston*,

185 F.3d at 839; *Jones* v. *Motorola, Inc.*, No. 00 C 6439, 2001 WL 864273, at *5 (N.D. Ill. July 30, 2001) (internal citation omitted).

Defendants argue that on September 13, 2011, the EEOC sent a right-to-sue letter to Myers dated September 12, 2011, via UPS and UPS attempted to deliver the package containing the letter to Myers on September 15, 2011, and again on September 20, 2011, leaving notices at Myers's residence both times. Myers, however, never received the correspondence, which was ultimately returned to the UPS facility as unclaimed on October 11, 2011.

Myers argues that he first received the right-to-sue letter dated September 10, 2011 two months later on December 15, 2011. Defendants, however, contend that the UPS tracking numbers demonstrate that Myers failed to take reasonable steps after UPS attempted to deliver his right-to-sue letter in September 2011 and that Myers should be deemed to have received the right-to-sue letter in September 2011. When Myers actually received the right-to-sue letter and whether he failed to take reasonable steps after UPS attempted to deliver the letter are questions of fact that are not properly considered on a motion to dismiss. *See*, *e.g.*, *Sawyer* v. *Columbia Coll.*, No. 09–cv–6962, 2010 WL 3081260, at *3 (N.D. Ill. August 5, 2010) (holding that defendants' copy of a postal receipt providing the mailing date of plaintiff's right-to-sue letter could not be considered on a motion to dismiss because statute of limitations is an affirmative defense which, absent the plaintiff's "pleading himself out of court," cannot be determined on the face of the complaint) (citing *Rosenblum* v. *Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)).[3] Accordingly, defendants' motion to dismiss Counts I and II is denied.

---

[3] Myers also contends that defendants violated the Americans with Disabilities Act (ADA), although he did not check the box on his EEOC charge alleging disability discrimination, nor did not he specifically include an ADA discrimination count in his second amended complaint. "Generally a plaintiff may not bring claims . . . that were not originally brought among the charges to the EEOC." *Bilal* v. *Rotec Indus., Inc.*, 326 F. App'x. 949, 953 (7th Cir. 2009) (internal quotation marks omitted). "In analyzing whether allegations in a complaint were among the charges brought before the EEOC, we look to the substance of

(continued...)

## II.     The Intentional Infliction of Emotional Distress Claim

Defendants contend that Myers's intentional infliction of emotional distress claim (count

V) should be dismissed because it is barred by the statute of limitations in the Illinois Local

Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act").   While

the statute of limitations is an affirmative defense that need not be anticipated in the complaint to

survive a motion to dismiss, *see United States* v. *Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), a

plaintiff may "plead [himself] out of court by pleading facts that establish an impenetrable

defense to its claims."  *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (internal

citation omitted).  Where "the allegations of the complaint itself set forth everything necessary to

satisfy the affirmative defense" the court may dismiss a claim in a Rule 12(b)(6) motion if the

claim is precluded by the applicable statute of limitations.  *Lewis*, 411 F.3d at 842; *see Brooks* v.

*Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (granting motion to dismiss based on the statute of

limitations where the relevant dates were set forth unambiguously in the complaint).

The Tort Immunity Act provides a one-year statute of limitations for all common law

civil actions against local entities or any of its employees.  745 ILL. COMP. STAT. 10/8-101(a).

---

[3](...continued)
the charges, not merely whether a particular box was checked on the EEOC form." *Id.* (internal citation
omitted).  A reasonable relationship between the allegations in the EEOC charge and the plaintiff's
complaint must exist in order to provide the defendants with notice of the charge.  *See Brown* v. *Lind-
Waldock & Co.*, 996 F. Supp. 809, 810 (N.D. Ill. 1998) (internal citations and quotations omitted)

Although he failed to check the box for disability discrimination, Myers included a narrative in
his EEOC charge stating that termination proceedings were initiated while he was recovering from a
work-related injury and still under his doctor's care and that Caucasian employees on disability leave
were allowed to return to work.  This description suffced to provide defendants with notice of Myers's
contention that he suffered discrimination based on his disability that precluded him from working.  *See
Brown*, 996 F. Supp. at 810 (claiming on his EEOC complaint that the plaintiff was terminated while on
doctor's leave provided sufficient information so that a disability claim could grow out of the allegation).
*But see Thompson* v. *Fairmont Chi. Hotel*, 525 F. Supp. 2d 984, 989, 990-91 (N.D. Ill. 2007) (briefly
mentioning an injury was insufficient for a claim to grow out of the form complaint).  In addition, the fact
that Myers did not specifically allege an ADA discrimination claim as a separate count in his second
amended complaint does not preclude him from bringing this claim.  *See Hatmaker*, 619 F.3d at 743.

The Act defines "local public entity" as including a "school district" and a "school board" and employee to mean a "member of a board . . . whether or not compensated." 745 ILL. COMP. STAT. 10/1-206; 745 ILL. COMP. STAT. 10/1-202; *Collins* v. *Bd. of Educ. of N. Chicago Comm'n Unit Sch. Dist. 187*, 792 F. Supp. 2d 992, 998–99 (N.D. Ill. 2011).  As both the Board and Pagliaro are within the umbrella of the Tort Immunity Act, Myers had until February 18, 2011 (one year after his termination giving rise to his intentional infliction of emotional distress claim) to bring this claim.  Because Myers did not file his initial complaint until March 14, 2012, the Tort Immunity Act's statute of limitations bars his claim.  Accordingly, Count V is dismissed with prejudice.

### III.    The Equal Protection Claim

Although not pleaded as an independent count, Myers alleges that the Board violated his right to equal protection of the laws under the Fourteenth Amendment.  Sec. Am. Compl. ¶¶ 1, 32   The equal protection clause of the Fourteenth Amendment protects "'the right to be free from invidious discrimination in statutory classifications and other governmental activity.'" *Nabozny* v. *Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (quoting *Harris* v. *McRae*, 448 U.S. 297, 322, 100 S. Ct. 2671, 65 L.E. 2d 784 (1980)).  To bring an equal protection claim, Myers must allege that he was (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated different from members of the unprotected class.  *See Brown* v. *Budz*, 398 F.3d 904, 916 (7th Cir. 2005).  Myers's complaint contains all of these allegations. Namely, Myers alleged that he is African-American and that the Board allowed Caucasian employees to take medical leave without terminating their employment.  *See Bennett* v. *Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (allegations that "'I was turned down for a job because of my race' is all a complaint has to say" to successfully plead race discrimination in violation of the

equal protection clause). Accordingly, Myers has pleaded a claim for violation of the equal protection clause.

### IV.    42 U.S.C. § 1981

Defendants argue that Myers's race discrimination claim under 42 U.S.C. § 1981 (count III) fails because (1) the Board cannot be held liable for violation of § 1981 under *respondeat superior*; (2) Myers failed to allege an unconstitutional deprivation; and (3) Pagliaro is entitled to qualified immunity.

#### A.    The Board

Myers alleges that the Board is liable under § 1981 based on *respondeat superior*. The doctrine of *respondeat superior*, however, does not permit recovery under § 1981. *See Smith* v. *Chicago Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1148 (7th Cir. 1999). To bring a § 1981 claim against a state actor, government entity, or municipality, a plaintiff must establish municipal liability as articulated by *Monell* v. *Dep't of Soc. Services of N.Y.C.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *See Jett* v. *Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (holding that § 1983 provides the mechanism for damages against municipalities for § 1981 violations and that *Monell* applies); *Smith*, 165 F.3d at 1148 ("[R]ecovery against a governmental body under § 1981 may not be based on *respondeat superior*. The plaintiff must show that the body's official policy or custom was discriminatory.").[4]

---

[4] The Civil Rights Act of 1991 added 42 U.S.C. § 1981(c), which states that ""[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Although the Seventh Circuit and the Supreme Court have not addressed whether this amendment creates an implied right of action against municipalities under § 1981, judges in this court have found that "'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981.'" *De* v. *City of Chicago*, 912 F. Supp. 2d 709, 730 (N.D. Ill. 2012) (quoting *Jett*, 491 U.S. at 733); *see also Harrison* v. *Ill. Dep't of Transp.*, No. 10-cv-4674, 2011 WL 2470626, at *5 (N.D. Ill. June 21, 2011); *Renta* v. *Cook Cnty.*, 735 F. Supp. 957, 976 n.7 (N.D. Ill. 2010); *Mohr* v. *Chi. Sch. Reform Bd of*

(continued...)

To bring a *Monell* claim, Myers must demonstrate that the discrimination was part of a widespread policy or practice, or that the discriminatory decisions were made by a person with final policy making authority for the government agency. *See Phelan* v. *Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006); *Vela* v. *Vill. of Sauk Vill.*, 218 F.3d 661, 665 (7th Cir. 2000). Although Myers brought suit under § 1981 instead of § 1983 against the Board, this is not fatal to his claims. A plaintiff need not plead legal theories if the alleged facts are sufficient to show that the case is plausible. *See Hatmaker*, 619 F.3d at 743.

Here, Myers alleges that the Board's employees engaged in a conspiracy to discredit Myers's work performance because of his opposition to unlawful employment activities and additionally permitted Caucasian employees to take leave for work related injuries without having their positions terminated. These allegations, however, do not evince a widespread unlawful practice or policy on the part of the Board. *See*, *e.g.*, *Phelan*, 463 F.3d at 790 ("The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.").

Still, a municipality may be liable under § 1983 if the particular course of action is undertaken by a policymaker even if the action is taken only once. *See Valentino* v. *Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (citing *Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). State law guides whether a person has policymaking authority and relevant factors include "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Id.* at

---

[4](...continued)
*Trs.*, 99 F. Supp. 2d 934, 938–39 (N.D. Ill. 2000).

676 (internal quotation marks omitted). Merely because an official has decisionmaking authority to hire and file personnel does not make them a policymaker; rather, "[t]here must be a delegation of authority to set policy for hiring and firing." *Id.* at 677 (citing *Kujawski* v. *Bd. of Cmmr's of Bartholomew Cnty., Ind.*, 183 F.3d 734, 739 (7th Cir. 1999)); *see also Duda* v. *Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (nothing in the Illinois School Code permits the inference that a superintendent has policymaking authority over personnel decisions). While the Board ultimately followed Pagliaro's decision to terminate Myers's employment, Myers has not alleged that Pagliaro was a policymaker to bring the Board within the auspices of *Monell* liability. Accordingly, Myers's § 1981 claim against the Board is dismissed.

### B. Assistant Superintendent Pagliaro

Myers additionally alleges that Pagliaro is liable in his individual capacity under § 1981. Defendants argue that Myers failed to allege a claim against Pagliaro in his individual capacity and that he is protected by qualified immunity.

An individual may be personally liable under § 1981 when the "individual defendant caused or participated in a constitutional deprivation." *Smith* v. *Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (internal quotation marks omitted); *Golden* v. *World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 702 (N.D. Ill. 2012). The defendant's participation can be shown if the official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent . . . ." *McPhaul* v. *Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000) (citation omitted). Myers alleges that Pagliaro was directly responsible for his termination based on his recommendation to the Board, and that his termination amounted to a constitutional

10

deprivation of rights because Caucasian employees with similar medical leaves were not subject to termination.

Pagliaro argues that he is entitled to qualified immunity, which shields government actors from civil damages unless they violate a clearly established constitutional right. *Xiong* v. *Wagner*, 700 F.3d 282, 289 (7th Cir. 2012) (internal citations omitted). A court will generally consider "'(1) whether the plaintiff's allegations show that the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the defendant's conduct.'" *Id*. (quoting *Hernandez ex rel. Hernandez* v. *Foster*, 657 F.3d 463, 473 (7th Cir. 2011)).[5] Myers has the burden to demonstrate that Pagliaro violated an established constitutional right. *Kernats* v. *O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). In order to show that the constitutional right was clearly established, courts will look to case law that is factually similar to show that a reasonable official in the defendant's position would have recognized the misconduct. *Id*.

Taking the facts as alleged in the complaint as true and drawing all reasonable inferences in favor of Myers, the court cannot conclude that qualified immunity protects Pagliaro from liability at this time. First, Myers alleges that Pagliaro treated him differently from other Caucasian employees who had also taken disability leave and, in doing so, violated a constitutional right. Second, the prohibition of discrimination by a supervisor against an employee on the basis of race was a clearly established constitutional right at the time of the events at issue. *See, e.g.*, *Jacobeit*, 673 F. Supp. 2d at 661 (citing *Auriemma* v. *Rice*, 910 F.2d 1449, 1457 (7th Cir. 1990)). Accordingly, Pagliaro's qualified immunity defense does not bar

---

[5]  Qualified immunity is generally presented in a summary judgment motion but can also be raised on a motion to dismiss. *Stevens* v. *Umsted*, 131 F.3d 697, 706 (7th Cir. 1997) (citing *Wilson* v. *Formigoni*, 42 F.3d 1060, 1064 (7th Cir. 1994). *But see Jacobeit* v. *Rich Twp. High Sch. Dist. 227*, 673 F. Supp. 2d 653, 661 (N.D. Ill. 2009) (qualified immunity "is almost always a bad ground for dismissal and is better addressed at summary judgment") (internal quotation marks omitted).

Myers's § 1981 claim, but Pagliaro may raise this affirmative defense on a motion for summary

judgment. *Cf. Alvarado* v. *Litscher*, 267 F.3d 648, 651—652 (7th Cir. 2001) ("Because an

immunity defense usually depends on the facts of the case, dismissal at the pleading stage is

inappropriate: '[T]he plaintiff is not required initially to plead factual allegations that anticipate

and overcome a defense of qualified immunity.'" (alteration in original) (quoting *Jacobs* v. *City

of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).

### V.      Breach of Contract

Defendants last argue that Myers's breach of contract claim (count IV) should be

dismissed because the Illinois Educational Labor Relations Act ("IELR") vests the Illinois

Educational Labor Relations Board with jurisdiction over matters involving claims for breach of

a collective bargaining agreement. *See* 115 ILL. COMP. STAT. 5/1 *et seq.*

The IELR "establishes procedures governing collective bargaining arrangements between

public educational institutions and their employees." *Tavernor* v. *Ill. Fed'n of Teachers*,

226 F.3d 842, 844 (7th Cir. 2000). Pursuant to the IELR, an individual may file a charge with

the IELR Board alleging an unfair labor practice and the IELR Board determines whether to file

a complaint against the employer. *See* 115 ILL. COMP. STAT. 5/15; *Shaikh* v. *Watson*, No. 10 C

1715, 2011 WL 589638, at *3 (N.D. Ill. Feb. 8, 2011). A decision by the IELR Board to forego

filing a complaint is appealable to the appellate court in the judicial district where the IELR

Board maintains an office. *See* 115 ILL. COMP. STAT. 5/16(c); *Shaikh*, 2011 WL 589638, at *3.

Myers's claim that defendants breached the collective bargaining agreement falls squarely within

the realm of the IELR and thus this court lacks jurisdiction to adjudicate the matter. *See Proctor*

v. *Bd. of Educ., Sch. Dist. 65, Evanston, Ill.*, 392 F. Supp. 2d 1026, 1031 (N.D. Ill. 2005) ("[T]he

Board has exclusive jurisdiction over all matters involving collective bargaining agreements,

12

including claims for breach of such agreements.") (quoting *Cessna* v. *City of Danville*, 296 Ill. App. 3d 156, 162-68, 230 Ill. Dec. 513, 693 N.E. 2d 1264 (1998) (and cases cited therein)); *cf. Alexander*, 586 F. Supp. 2d at 911 (a federal court is not the correct forum to appeal an adverse decision by the IELR Board). Accordingly Count IV is dismissed with prejudice.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Counts IV and V are dismissed with prejudice. Count III against the Board is dismissed with prejudice. Defendants' motion to dismiss Counts I and II are denied. Count III against Pagliaro in his individual capacity is also denied. This case will be called for a status hearing on September 10, 2013 at 8:30 a.m.

Dated: July 26, 2013                                        ENTER:

                                                            _____
                                                            JOAN HUMPHREY LEFKOW
                                                            United States District Judge